## PRELIMINARY STATEMENT

Defendant Ekaterina Ovodova (hereinafter "Ovodova" or "Defendant"), along with Co-Defendant Bullion Shark, LLC (hereinafter "Shark" or "Bullion Shark") (hereinafter collectively the "Defendants") submits this Memorandum of Law in Opposition to Plaintiff Bullion Exchange LLC's ("Bullion Exchange" or "Plaintiff") Order to Show Cause seeking: (i) an Order Temporarily Restraining and for a Preliminary Injunction pursuant to Fed. R. Civ. P. Rule 65 and 18 U.S.C. § 1836(b)(3) from using, disseminating, and benefiting from Bullion Exchange's trade secrets; (ii) directing Defendants to turn over all physical and electronic copies of Bullion Exchange's misappropriated trade secrets and documents derived from Bullion Exchange's trade secrets; and (iii) directing Defendants to destroy all electronically saved information containing or derived from Bullion Exchange's trade secrets.

As discussed further herein, Plaintiff is unable to show a likelihood of success of the merits on any of their claims. Plaintiff is further unable to establish that it will suffer irreparable harm without a TRO and preliminary injunction. Plaintiff cannot establish that its Proprietary Marketing Strategy is a trade secret, sufficient to state a claim under the Defend Trade Secrets Act 18 U.S.C. § 1836, the New York Trade Secret Law, and unfair competition under the common law, breach of fiduciary duty, breach of the faithless server doctrine, and unjust enrichment.

## STATEMENT OF THE FACTS

Ovodova has worked for Bullion Exchange for approximately nine (9) years. *See* Ekaterina Ovodova Declaration ("Ovodova Decl.") ¶3.  Ovodova initially began working for Bullion Exchange in or about February 2015 in their Shipping Department. Ovodova Decl. ¶4.  Ovodova was later promoted to the graphic design department in or about January 2017. Ovodova Decl. ¶5. On or about December 29, 2018, Ovodova was once again promoted to the position of Director of Marketing.  Ovodova Decl. ¶6.  In or about July 2023, Ovodova began looking for a new job.

1

Ovodova Decl. ¶12.  Shortly thereafter, on or about August 9, 2023, Ovodova was contacted by Candidate Labs Inc., ("Candidate Labs") a recruitment firm, about a position as Head of eCommerce for Bullion Shark, LLC ("Bullion Shark").  Ovodova Decl. ¶¶14 and 15.  Ovodova expressed an interest in Bullion Shark after doing some initial research to confirm that Bullion Shark was not a direct competitor to Bullion Exchange.  Ovodova Decl. ¶¶16 and 17. On or about August 23, 2023, Ovodova had a virtual interview with Nick and Andrew Adamo from Bullion Shark for a position as Head of eCommerce. Ovodova Decl. ¶21.  Ovodova was requested to provide an action plan based on Bullion Shark's current web presence.  Ovodova Decl. ¶30.  On or about August 25, 2023, Ovodova prepared a Marketing Plan Presentation for Bullion Shark. Ovodova Decl. ¶41; *see also* Ovodova Decl. at **Exh. 2**. On September 1, 2023, Ovodova was given an offer and accepted same to work for Bullion Shark starting September 18, 2023. Ovodova Decl. ¶52.  On September 7, 2023, Ovodova provided notice of her resignation to Ernest Gozenput. Ovodova Decl. ¶59.  On January 23, 2024, Plaintiff Bullion Exchange commenced the instant action with the filing of the Complaint with the United States District Court for the Eastern District Court of New York.  *See* ECF Docket No. 1.  Plaintiff also filed an Order to Show Cause seeking a temporary restraining order and preliminary injunction.  *See* ECF Docket No. 7.

## <u>LEGAL STANDARD</u>

In the second circuit, the standard for issuance of a Temporary Restraining Order ("TRO") is the same the same standard for a preliminary injunction. *See Fairfield Cty. Med. Ass'n v. United Healthcare of New Eng.*, 985 F. Supp. 2d 262, 270 (D. Conn. 2013), *aff'd*, 557 Fed. Appx. 53 (2d Cir. 2014).  A party seeking a preliminary injunction must show: (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public

interest." *See N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018). Additionally, injunctions are typically warranted only where the balance of the equities tips in the moving party's favor and where an injunction is in the public interest. *See Winter v. Nat. Hus. Dec. Counsel, Inc.*, 555 U.S. 7, 20 (2008).

To establish irreparable injury, one must demonstrate that absent preliminary relief, it will suffer "an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *See Singas Famous Pizza Brands Corp., v. N.Y. Adver. LLC*, 468 Fed. Appx. 43, 45 (2d Cir 2012). Moreover, a loss that is difficult to replace or to measure is generally irreparable. *See Mister Softee, Inc. v. Diaz*, 2020 U.S. Dist. LEXIS 118979 (E.D.N.Y. July 2, 2020).

The Second Circuit has adopted a flexible standard with regard to the "likelihood of success" requirement, allowing a party seeking a preliminary injunction to show either a likelihood of success on the merits or "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *See Citigroup Glob. Markets, Inc., v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35, (2d Cir. 2010). To establish a likelihood of success on the merits, plaintiff "need not show that success is an absolute certainty. [It] need only make a showing that the probability of his prevailing is better than fifty percent." *See Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 509 (S.D.N.Y. 2017) (citation omitted).

## <u>ARGUMENT</u>

### I.   <u>PLAINTIFF CANNOT ESTABLISH IRREPRABLE HARM</u>

Demonstrating irreparable harm is "the single most important prerequisite for the issue of" a temporary restraining order. *Faively Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118

(2d Cir. 2009) (internal citation omitted). While a businesses' "loss of reputation and goodwill constitutes irreparable harm" (*Really Good Stuff, LLC v. BAP Investors, LLC*, 813 F. App'x 39, 44 (2d Cir. 2020) (*citing Register.com, Inv. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004)), the "loss of trade secrets and client relationships does not establish irreparable harm absent a showing that there is an imminent risk of dissemination of trade secrets and that plaintiff's injuries are not compensable through an award of damages." *See Faiveley*, 559 F.3d at 119 ([W]here there is no danger that a misappropriator will disseminate proprietary information, 'the only possible injury that [the] plaintiff may suffer is loss of sales to a competing product . . . [which] should be fully compensable by money damages.'" (*quoting Geritrex Corp. v. Dermarite Indus., LLC*, 910 F.Supp. 955, 966 (S.D.N.Y. 1996)).

A. *Plaintiff is unable to establish that Defendant Shark and Plaintiff are direct Competitors*

To establish irreparable harm, Plaintiff must show that Defendants are direct competitors of Plaintiff, which it cannot show. *See Cenveo Corp. v. Diversapack LLC*, 2009 Dist. LEXIS, *28 (S.D.N.Y. Oct. 1, 2009) ("Here, [plaintiff] concedes that [defendant] is not a direct competitor and has not alleged misappropriation of trade secrets, clients, or confidential information. Without such claims, [plaintiff] has not made a clear showing of irreparable harm"); *Rensselaer Polytechnic Inst. v. Appl Inc.*, 2014 U.S. Dist. LEXIS 5186, *25 (N.D.N.Y. Jan 15, 2014) ("the parties are not direct competitors, as neither RPI nor Dynamic practices the '1793 Patent, there is little risk that the plaintiff will suffer irreparable harm through the continued use of accused technology that cannot be compensated through monetary relief"); *see also Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*, 2012 U.S. Dist. LEXIS 186322, *10 (Cal. C.D.C. Dec. 19, 2012) (finding that the plaintiff would not suffer damage to its revenues because it is not a direct competitor of the

defendants).

The Declaration of Ekaterina Ovodova sufficiently establishes that Plaintiff and Bullion Shark are not direct competitors. *See* Ovodova Decl. ¶¶62-70. There is a fundamental difference between the types of products that Plaintiff sells and the types of products that Bullion Shark sells. Specifically, Plaintiff is in the business of selling bullion, while Defendant Shark derives the majority of its business through the sale of rare coins. Ovodova Decl. ¶68. Plaintiff's products derive their value based on the type of metal that the products, including coins, are comprised of. Ovodova Decl. ¶65. Meaning, the value of the product that Plaintiff sells is determined based upon whether the coin is gold, silver, platinum, etc., which is based on overall financial market conditions (are rare metals a safer bet than, for example, crypto or other equities).

Conversely, the types of products that Bullion Shark sells derives the value based on the rarity of the coin itself. Ovodova Decl. ¶¶68 and 69. For example, Bullion Shark specifically offers one subset of rare coins that are "ancient and shipwreck coins." The value of those coins is determined based upon the shipwreck that the coins were found at, and the rarity and number of coins that are in existence. Simply put, Bullion Shark's customers are collectors of coins, while Plaintiff's customers are persons seeking to make a profit by buying the metal at a low price point and reselling when the value of that metal is higher. Ovodova Decl. ¶67. As such, Plaintiff cannot establish that Plaintiff and Bullion Shark are direct competitors, sufficient to warrant a finding that it will suffer irreparable harm.

Plaintiff's inability to establish this necessary element of a request for injunctive relief requires denial of the application.

B. *Plaintiff's alleged harm is theoretical and could be compensated through a monetary award.*

"Irreparable injury must be 'likely in the absence of an injunction'; it is not enough for a

plaintiff to face some 'possibility' of irreparable harm." *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 313 (S.D.N.Y. 2010) (*quoting Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365, 374 (2008). "This is because a preliminary injunction is an 'extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Id.*. "[I]f a party fails to show irreparable harm, a court need not even address the remaining elements" of the preliminary injunction standard. *Coscarelli v. ESquared Hosp. LLC*, 364 F.Supp.3d 207, 221 (S.D.N.Y. 2019). "[C]onclusory statements of loss of reputation and goodwill constitute an insufficient basis for a finding of irreparable harm." *Uni-World Capital L.P. v. Preferred Fragrance, Inc.*, 73 F.Supp.3d 209, 236 (S.D.N.Y. 2014); *see also Shepard Indus. v. 135 E. 57th St., LLC*, 1999 U.S. Dist. LEXIS 14431, *24-25 (S.D.N.Y. Sept. 15, 1999) (vacating preliminary injunction because plaintiff only asserted conclusory allegations of irreparable harm).

Here, Plaintiff merely alleges speculative harm by incorrectly alleging that Defendants misappropriated Plaintiff's customer lists and marketing strategy through the help of Defendant Ovodova and that there is a risk that Defendants will sell this information to competitors of Plaintiff. However, this purely speculative claim fails as there has been no affidavit of declaration submitted in support of this claim that actually states that Plaintiff has lost any customers since Defendant Ovodova left her employment with Plaintiff in September 2023- more than seven (7) months ago. Instead, Plaintiff attempts to allege that Plaintiff stands to lose market share and valuable business without any support. However, absent evidentiary support that Defendant Shark or Defendant Ovodova is or will disseminate Plaintiff's customer list, there is no basis for this Court to enter a preliminary injunction against Defendants. *See Faiveley*, 559 F.3d 110 (2d Cir. 2009). Plaintiff has had seven (7) months to provide the name(s) of customers that it believed that

Defendants improperly solicited due to the alleged theft of Plaintiff's customers, which it has not done. Nor has Plaintiff provided any evidentiary support to show that it lost business or market share or, even less, traffic to their website in the last seven (7) months since Ovodova left her employment with Plaintiff. Even more telling, Plaintiff has failed to prove *any* evidentiary support that there is an imminent risk that Defendants would disseminate its trade secrets. *Id.*

In *Faiveley Transp. Malmo AB v. Wabtec Corp.*, the Second Circuit found that the plaintiff had failed to provide any evidentiary support of irreparable harm, because the plaintiff was unable to show that despite using plaintiff's proprietary information for twelve years to manufacture products, the plaintiff was unable to provide any evidentiary support that the defendant was disseminating plaintiff's trade secrets. *Faiveley Transp. Malmo AB v. Wabtec Corp.,* 559 F.3d 110 (2d Cir. 2009). Accordingly, in the Second Circuit the District Court's granting of a preliminary injunction due to the absence of any evidentiary support that the proprietary information as to be disseminated. *Id.* Similarly here, Plaintiff has failed to provide any evidentiary support that Defendant Shark or Defendant Ovodova is disseminating Plaintiff's trade secrets – which they cannot show, as Defendant Ovodova is not in possession of any of Plaintiff's trade secrets.

Similarly, in *Shepard Indus.*, the temporary injunctive relief ordered by the Court and agreed to and extended by the parties was vacated because the plaintiff's "pleadings, affidavits, and exhibits consist[ed] only of conclusory allegations of harm to its goodwill or reputation in the absence of a preliminary injunction." 1999 U.S. Dist. LEXIS 14431, at *24. The Court further found that the plaintiff failed to allege it faced imminent financial ruin and that its damages would be easily calculable at trial, sufficient to find that the plaintiff failed to show a sufficient threat of irreparable harm. *Id.* The same is true here. Plaintiff's pleadings, declarations and exhibits contain *only* conclusory allegations that it will suffer irreparable harm to its goodwill or reputation.

Plaintiff is unable to show through any documentary evidence or otherwise that Defendants are disseminating its supposed trade secrets, nor has Plaintiff submitted *any* evidentiary support to show that its sales have gone down in the last seven months since Defendant Ovodova left her employment with Plaintiff. Further, even if Plaintiff could show a loss in financials since Defendant Ovodova left her employment, it cannot connect any loss in finances to any supposed misappropriation of its trade secrets. As such, Plaintiff cannot establish irreparable harm.

Plaintiff submits contradictory positions in its Complaint and in its Memorandum of Law in Support. For instance, in paragraph 78 of the Complaint, Plaintiff alleges that as Head of eCommerce for Defendant Shark, Defendant Ovodova is using Plaintiff's customer list and marketing strategy to divert Plaintiff's customers to Defendant Shark and to deprive Plaintiff of those business opportunities. *See* ECF Doc. No. 1, at ¶ 78. Such an allegation would require knowledge by Plaintiff of customers that have been diverted to Defendant Shark. However, Plaintiff states in its Memorandum of Law in Support that Plaintiff "could not possibly track what business opportunities have been, and will be, lost and money damages thus would prove an inadequate remedy." *See* ECF Doc. No. 11, P. 13. Plaintiff cannot assert both that it knows that business has been diverted to Defendant Shark and that Plaintiff has no way of tracking what opportunity has been lost. Defendant Ovodova submits that Plaintiff asserts these conflicting statements in an effort to overcome its failure to establish irreparable harm. As such, Plaintiff only asserts speculative irreparable harm. Based on the foregoing a TRO or preliminary injunction must not be granted.

Moreover, any harm to Plaintiff would be made whole by an award of monetary damages should this Court find that Defendant Shark or Defendant Ovodova misappropriated its trade secret(s). *See Rush v. Hillside Buffalo, LLC*, 314 F.Supp.3d 477 (W.D.N.Y. 2018) (denying request

for injunctive relief after finding that monetary damages were sufficient); *see also Eastview Mall, LLC v. Grace Holmes, Inc.*, 182 A.D.3d 1057, 1058 (4th Dept. 2020) ("[W]here 'any loss of sales [caused] by the allegedly improper conduct of [the] defendant can be calculated,' a plaintiff has an adequate remedy in the form of money damages and is not entitled to injunctive relief.")

In *Rush*, the Court found that monetary damages would have been sufficient to compensate the plaintiff who alleged that defendant misused plaintiff's trademark for an event. *Rush*, 314 F.Supp.3d 477. Moreover, in *Biocon Ltd. v. Abraxis Bioscience, Inc.*, the Southern District Court found that a loss of customers could be compensated through monetary damages. *Biocon Ltd. v. Abraxis Bioscience, Inc.*, 2016 U.S. Dist. LEXIS 139211, *13 (S.D.N.Y. Sept. 26, 2016). Similarly, Plaintiff could determine which customers it lost after Defendant Ovodova's cessation of employment with Plaintiff and any damages would be compensable through monetary damages. Accordingly, Plaintiff is unable to establish that it will suffer irreparable harm absent a TRO or preliminary injunction.

## II.    PLAINTIFF CANNOT SHOW A LIKELIHOOD OF SUCCESS ON THE MERITS

Assuming, *arguendo*, that this Court does find that Plaintiff has established that it will suffer irreparable harm, which it should not, Plaintiff cannot establish a likelihood of success on the merits of any of their claims.

### A.  *Plaintiff cannot establish the likelihood that it will prevail on its cause of action pursuant to the Defend Trade Secrets Act*

To prevail under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, Plaintiff is required to show that Defendants disclosed a trade secret without consent where either: (1) that secret was acquired by improper means; or (2) at the time of disclosure, Defendants knew or had reason to know that the secret was acquired by improper means, under circumstances creating a

duty to maintain secrecy, or derived from a person who owed such a duty. 18 U.S.C. § 1839(5). Under this test, "improper means" includes misrepresentation and breach or inducement of the breach of the duty to maintain secrecy; it does not include where the information in question is "reverse engineer[ed]" or "independent[ly] [d]eriv[ed]". *Intertek Testing Servs., N.A., Inc. v. Pennisi*, 443 F. Supp. 3d 303, 340 (E.D.N.Y. 2020).

A trade secret is defined as "all forms and types of financial business, scientific, technical, economic, or engineering information . . . if (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value . . . from not being generally known to and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information . . ." 18 U.S.C. § 1839(3). The Second Circuit has previously found that "[a] customer list developed by a business through substantial effort and kept in confidence may be treated as a trade secret and protected . . . **against disclosure to a competitor**, provided the information it contains is not otherwise readily ascertainable." *Plaza Motors of Brooklyn, Inc. v. Bogdasarov*, No. 21-cv-6546 (KAM), 2021 WL 5630910 (E.D.N.Y. Dec. 1, 2021) (emphasis added) (quoting *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 44 (2d Cir. 1999). In addition, general and vague references to methods, processes, interpretation, programs, and data configuration protocols do not plausibly support the existence of a trade secret without supportive facts explaining how such strategies, techniques or models function. *See Elsevier Inc. v. Doctor Evidence, LLC*, 2018 U.S. Dist. LEXIS 10730, 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018) (Holding that "[a]lleging the existence of general categories of confidential information, without providing any details to generally define the trade secrets at issue . . . does not give rise to a plausible allegation of a trade secret's existence.") (internal quotation marks and citation omitted) (emphasis in original).

As mentioned herein, Plaintiff cannot establish that it is a direct competitor with Bullion Shark as they both sell products that have different values based upon different characteristics. Plaintiff's products derive their value based upon the type of metal and the current market price of that metal. Defendant Shark's products primarily derive their value based on the number of coin in existence and the rarity of the coin, independent from the type of metal in the coin itself. Thus, Plaintiff's claim pursuant to the DTSA must fail for that reason alone.

Further, a party must provide more than "mere speculation" or "guesswork" that the confidential and proprietary information was improperly taken and more likely than "an alternative, lawful explanation of events." *See Joester Loria Group v. Licensing Company Ltd.*, 2011 U.S. Dist. LEXIS 46597, *1-3 2011 WL 1642736 (S.D.N.Y. 2011) (dismissing misappropriation claim wherein plaintiff alleged that defendant was given confidential and proprietary information regarding plaintiff's marketing strategies and that defendant used that information to bid against plaintiff for a contract, which was supported only by the contention that defendant necessarily "had to use [plaintiff's] proprietary and confidential information.").

First, Plaintiff cannot establish that their Proprietary Marketing Strategy is a trade secret. Ovodova Decl. **Exh. 2**. The information that Defendant Ovodova provided to Defendant Shark at the direction of Candidate Labs at best contained certain key word searches for certain phrases relating to bullion and other rare coins and metals. Ovodova Decl. **Exh. 1**. In fact, the keywords in Ovodova's Presentation shows Defendant Shark's links and keywords, not Plaintiff's. *See* Ovodova Decl. **Exh. 2**. Thus, the keywords are not Plaintiff's. Nor can this Court nor Defendants say with reasonably certainty if anything has since been edited since October 2023. Ovodova Decl. ¶¶71 and 72. This information certainly does not rise to a level of a trade secret as it merely provides marketing strategies for key words that potential customers use when searching for

bullion and rare coins. *See In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 255 (S.D.N.Y. 2009) (holding that marketing strategies are not trade secrets where the plaintiff "failed to explain what particular information about the particular . . . marketing techniques are not already public [and] are not already commonly known in the industry"); *Marietta Corp. v. Fairhurst*, 301 A.D.2d 734, 754 N.Y.S.2d 62, 67 (N.Y. App. Div. 2003) (concluding that "pricing data and market strategies . . . would not constitute trade secrets"); *see also Silipos, Inc. v. Bickel*, No. 06 Civ. 2205, 2006 U.S. Dist. LEXIS 54946, 2006 WL 2265055, at *4 (S.D.N.Y. Aug. 8, 2006) ("[T]rade-secret protection does not extend to information regarding market strategies." (internal quotation marks omitted)). Further, the information contained in the Proprietary Marketing Strategy and the Marketing Plan Presentation are comprised of general search terms, keywords and data, all of which are derived from online website and tools that are accessible by any company. Ovodova Decl. ¶¶35, 43 and 51.

*In re Parmalat Sec. Litig.*, the key word searches for phrases relating to bullion and other rare coins and metals is public and commonly known in the industry. Defendant Shark works with an affiliate entity, Semrush, which provides keyword search terms, just as the those listed in the Bullion Shark has hired an affiliate program, Semrush, that can provide the keyword search terms (or similar keyword search terms) that are contained in the Marketing Plan Presentation. Thus, with regards to the marketing plan, Plaintiff cannot establish that the information contained in its marketing plan is not already public and commonly known in the industry. Therefore, Plaintiff cannot show that it likely to prevail on its DTSA claim regarding its marketing plan. Ovodova Decl. ¶35.

Second, Plaintiff cannot establish that Defendant Shark ever received or was provided a copy of Plaintiff's customer list and cannot establish that Defendant Ovodova, as an employee of

Defendant Shark or individually for her own purposes, is utilizing Plaintiff's customer list. Instead, Plaintiff makes untrue and speculative statements in an attempt to overcome its failure to establish a claim pursuant to the DTSA. Plaintiff's claim that Defendant Ovodova hired or commissioned to provide services to Defendant Shark while she was still employed by Plaintiff is demonstrably false.

Further, Plaintiff has failed to establish a single customer that Defendant Ovodova or Defendant Shark has misappropriated. This is because no such customer list was ever provided. Accordingly, Plaintiff is unable to establish a likelihood of success on the merits of its DTSA claim and Plaintiff's request for an order to show cause must be denied in its entirety.

B. *Plaintiff cannot establish the likelihood that it will prevail on its cause of action for violation of New York Trade Secret Law*

"Under New York law, '[a] plaintiff claiming misappropriation of a trade secret must prove that (1) it possessed a trade secret, and (2) the trade secret was used by defendant in breach of an agreement, confidence, or duty, or as a result of discovery by improper means.'" *Intertek Testing Servs.*, 443 F. Supp. 3d at 339 (*citing Universal Instruments Corp. v. Micro Sys. Eng'g, Inc*., 924 F.3d 32, 49 (2d Cir. 2019)). "A trade secret is any formula, pattern, device or compilation of information which is used in one's business, and which gives one an opportunity to obtain an advantage over competitors who do not know or use it." *Id.*; *accord Faiveley Transp. Malmo AB*, 559 F.3d at 117.

First, regarding the marketing strategy that Plaintiff claims constitutes a trade secret, the information contained in the action plan that the recruiting agency had Defendant Ovodova provide to Defendant Shark as part of her interview process does not give Plaintiff an advantage over competitors who do not know or use it. The key word search terms that were contained in the marketing strategy are commonly known, and Defendant Shark pays a third-party software

company to provide they key word search terms to Defendant Shark. Thus, the information contained in the marketing strategy is not a trade secret because it does not give Plaintiff an advantage over competitors – to the extent Defendant Shark is a competitor – due to the ability to obtain the information through an independent source.

Second, Plaintiff is unable to establish that its customer information was used by Defendant Shark or Ovodova. While Plaintiff relies on allegations "upon information and belief" that Defendant Shark is utilizing Plaintiff's customer list, Defendant Ovodova never provided the customers lists to Bullion Shark. Ovodova Decl. ¶¶57 and 58. A fact underscored considering that Plaintiff has failed to allege or show a single customer that ceased doing business with Plaintiff due to any alleged misappropriation of Plaintiff's customer list since Defendant Ovodova left her employ with Plaintiff seven months ago. Such a speculative claim is insufficient to warrant a TRO. *See Medquest Ltd. v. Rosa*, 2023 U.S. Dist. LEXIS 46830, *16 (S.D.N.Y. 2023) ("speculative allegations are not sufficient to allege misappropriation of a trade secret."); *Frydman v. Verschleiser*, 172 F. Supp. 3d 653, 674-75 (S.D.N.Y. 2016) (dismissing claim that a defendant "conspired to steal the Stolen Trade Secrets" and "effected the scheme through [another individual]" as conclusory). Thus, Plaintiff is unable to establish a likelihood of success that Defendants are utilizing Plaintiff's customer list through improper means.

Moreover, Plaintiff is unable to establish that there was any misappropriation by Defendant Ovodova due to any alleged breach of an agreement. Instead, Plaintiff attempts to allege that Defendant Ovodova was bound based upon Plaintiff's employee handbook. However, an employee handbook is not automatically deemed a contract pursuant to New York Law. *See Recovery Racing III LLC v. Brown*, 2021 U.S. Dist. LEXIS 262614, *813 (E.D.N.Y. 2021); *Hecht v. Nextel*, 2012 U.S. Dist. LEXIS 89351, at *19 (S.D.N.Y. June 27, 2012) ("It is well settled under

New York law that a disclaimer in an employment handbook indicating that it is not a contract precludes a breach of contract claim."). Notably, despite Plaintiff's averments about how "top secret" their marketing strategy and customer list are, conspicuously absent from Plaintiff's purported stringent security controls is any restrictive covenant prohibiting such disclosure and use.

Thus, Plaintiff is unable to show a likelihood of success on its claim for a violation of New York Trade Secret Laws.

C. *Plaintiff cannot establish the likelihood that it will prevail on its cause of action for Unfair Competition*

Plaintiff fails to address the requisite elements of its unfair competition claim, warranting a finding that Plaintiff has failed to establish a likelihood of success on the merits of that claim.

Pursuant to New York law, a claim for unfair competition is predicated upon "the alleged bad faith misappropriation of a commercial advantage belonging to another by exploitation of proprietary information or trade secrets." *Weil v. Stenzler*, 2019 N.Y. Misc. LEXIS 1751 (Sup. Ct. N.Y. Cnty. Apr. 5, 2019) (internal citations omitted). Thus, in order to establish a claim for unfair competition, Plaintiff is required to establish that (1) it possessed a trade secret; (2) Defendant(s) used that trade secret in breach of an agreement, confidential relationship, or duty, or as a result of discovery by improper means; and (3) Defendant(s) engaged in bad faith misappropriation of a commercial advantage belonging exclusively to Plaintiff. *See Schroeder v. Pinterest Inc.*, 133 A.D.3d 12 (1st Dept 2015); *Weil*, 2019 N.Y. Misc. LEXIS 1751. Moreover, "[u]nder New York law, damages are an essential element of unfair competition claims." *eCommission Sols, Inc. v. CTS Holdings Inc.*, 860 Fed. Appx. 758, 760 (2d. Cir. 2019) (granting summary judgment to defendant because plaintiff failed to provide any admissible evidence to support its claim that defendant's use of plaintiff's pricing and customer list caused a loss of business to plaintiff); *see*

*also Waste Distillation Tech., Inc. v. Blasland & Bouck Eng'rs, P.C.*, 136 A.D.2d 633, 523 N.Y.S.2d 875 (2d Dept. 1988) ("[T]he absence of sufficient allegation of special damages mandates the dismissal of the plaintiff's unfair competition and prima facie tort causes of action."). The damages alleged pursuant to an unfair competition claim must be directly traceable to the acts of unfair competition, and the "damages cannot be remote, contingent or speculative . . . . The standard is not one of mathematical certainty but only reasonable certainty." *Id.* (*quoting E.J. Brooks Co. v. Cambridge Sec. Seals*, 31 N.Y.3d 441, 80 N.Y.S.3d 162 (2018).

Here, Plaintiff cannot establish that the alleged Proprietary Marketing Strategy and action plan is a trade secret. Thus, the only alleged trade secret that Plaintiff can attempt to claim it possessed was its customer list. However, Plaintiff is unable to establish the remaining elements of the unfair competition claim. Recognizing its failure to establish this claim, Plaintiff's Memorandum of Law provides little to no argument relating to the remaining elements of an unfair competition claim. To that end, Plaintiff is unable to produce any facts to establish that it is likely to show that Defendant Shark or Defendant Ovodova are using Plaintiff's customer list. Defendant Ovodova has not provided *any* copy of Plaintiff's customer list and none of Defendant Shark's employees are using Plaintiff's trade secret. Ovodova Decl. ¶57.

Furthermore, Plaintiff only alleges hypothetical harm by claiming that it is "highly likely" that Defendant Ovodova misappropriated Plaintiff's alleged trade secrets to give Defendant Shark a competitive advantage and to impress Defendant Shark. Plaintiff cannot establish, let alone does not allege, any damages attributable to any alleged theft of trade secrets. Moreover, as Defendant Ovodova is not using any of Plaintiff's trade secrets, Plaintiff will be unable to prove damages, and Plaintiff is unable to establish a likelihood of success on the merits of their unfair competition claim. Accordingly, Plaintiff's request for a TRO and preliminary injunction must be denied.

D. *Plaintiff cannot establish the likelihood that it will prevail on its cause of action for Breach of Fiduciary Duty and/or Faithless Servant Doctrine*

New York's faithless servant doctrine holds that "[o]ne who owes a duty of fidelity to a principal and who is faithless in the performance of his services is generally disentitled to recover his compensation, whether commissions or salary. *Phansalkar v. Anderson Weinroth Co., L.P.*, 344 F.3d 184, 200 (2nd Cir. 2003) (*quoting Fieger v. Iral Jewlery, Ltd*., 41 N.Y.2d 928, 928, 363 N.E.2d 350, 394 N.Y.S.2d 626 (1977).

Under New York law, there are two standards for determining whether an employee's conduct is encompassed by the faithless servant doctrine: 1) "misconduct and unfaithfulness substantially violate the contract of service" which requires a "persistent pattern", and (2) "misconduct by an employee that rises to the level of a breach of a duty of loyalty or good faith." *Miller v. Levi & Korsinsky, LLP*, No. 20 CIV. 1390 (LAP), 2021 U.S. Dist. LEXIS 27448, 2021 WL 535599, at *6 (S.D.N.Y. Feb. 12, 2021). "Some federal courts treat breach of fiduciary duty claims and claims based on the faithless servant doctrine as doctrinally distinct" while "many courts do not so distinguish the two claims, and some even note that they are essentially the same." *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 242 (2d Cir. 2020); *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 524-25 (S.D.N.Y. 2011).

In New York, courts "continue to apply two alternative standards for determining whether an employee's conduct warrants forfeiture under the faithless servant doctrine." *Carco Grp., Inc. v. Maconachy*, 383 F. App'x 73, 76 (2d Cir. 2010). "The first standard requires [that] the misconduct and unfaithfulness substantially violates the contract of service such that it permeates the employee's service in its most material and substantial part." *Doe v. Solera Capital LLC*, 18-CV-1769-ER, 2019 U.S. Dist. LEXIS 55860, 2019 WL 1437520 (Mar. 31, 2019), *vacated on other grounds*, 2020 U.S. Dist. LEXIS 258328, 2020 WL 11027792 (S.D.N.Y. Dec. 16, 2020) (internal

quotation marks, alterations, and citations omitted). The second standard is less exacting, requiring only "misconduct . . . that rises to the level of a breach of a duty of loyalty or good faith." *Phansalkar*, 344 F.3d at 202.

Unlike a traditional breach of fiduciary duty claim, which requires a showing of actual damages, to prove a violation of New York's faithless servant doctrine, an employer is not obligated to show that it suffered . . . provable damage as a result of the breach of fidelity by the agent. *Johnson v. Summit Acquisitions*, LLC, 2019 U.S. Dist. LEXIS 53954, 2019 WL 1427273, at *9 (N.D.N.Y. Mar. 29, 2019) ("Breach of duty of loyalty and violation of the faithless servant doctrine are essentially the same claims, except that under the faithless servant doctrine, the employer need not show that the employee caused damages.").

The duty of loyalty has been limited to cases where the employee, acting as the agent of the employer, unfairly competes with his employer, diverts business opportunities to himself or others to the financial detriment of the employer, or accepts improper kickbacks. *Grewal v. Cuneo*, No. 13-CV-6836-RA, 2016 U.S. Dist. LEXIS 8349, 2016 WL 308803, at *7 (S.D.N.Y. Jan. 25, 2016) (*quoting Farricker v. Penson Dev., Inc*., No. 07-CV-11191-DAB, 2010 U.S. Dist. LEXIS 20918, 2010 WL 845983, at *2 (S.D.N.Y. Mar. 4, 2010)).

Similarly, to recover damages for breach of fiduciary duty under New York law, a plaintiff must prove "(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Armentano v. Paraco Gas Corp*., 90 A.D.3d 683, 684, 935 N.Y.S.2d 304 (2d Dep't 2011) (quotation omitted). "A fiduciary relationship may exist where one party reposes confidence in another and reasonably relies on the other's superior expertise or knowledge . . . but an arms-length business relationship does not give rise to a fiduciary obligation." *WIT Holding Corp. v. Klein*, 282 A.D.2d 527, 529, 724 N.Y.S.2d 66 (2d

Dep't 2001).  Indeed, "[t]he fiduciary relationship must predate any alleged breach, and cannot arise based on plaintiff's subjective trust in a defendant." *Sheppard v. Manhattan Club Timeshare Ass'n Inc.*, No. 11 CIV. 4362 PKC, 2012 U.S. Dist. LEXIS 72902, 2012 WL 1890388, at *8 (S.D.N.Y. May 23, 2012) (citing *SNS Bank, NV v. Citibank, NA.*, 7 A.D.3d 352, 355, 777 N.Y.S.2d 62 (1st Dep't 2004)).  Where a party "fails to allege the existence of a trade secret" it "thus cannot premise a claim for breach of fiduciary duty on disclosure of trade secrets." *Garvey v. Face of Beauty LLC*, 634 F. Supp. 3d 84, 93 (S.D.N.Y. 2022).

A court may dismiss a claim as duplicative if relying on the same alleged acts, the claim simply seeks the same damages or other relief already claimed in a companion cause of action. *Supreme Showroom, Inc. v. Branded Apparel Grp. LLC*, 16 Civ. 5211 (PAE), 2018 U.S. Dist. LEXIS 107902, 2018 WL 3148357, at *12 n.14 (S.D.N.Y. June 27, 2018) (internal quotation marks and citation omitted). A breach of fiduciary duty is a common law tort claim that allows an injured party in an agency relationship to recover for that agent's misconduct, and is not enforceable unless and until damages are sustained. *Murphy v. Morlitz*, 751 F. App'x 28, 30 (2d Cir. 2018); *Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*, No. 12 Civ. 8205, 2013 U.S. Dist. LEXIS 107552, 2013 WL 3943267, at *11 (S.D.N.Y. July 31, 2013). By contrast, the faithless servant doctrine functions as an alternative cause of action that is designed to compensate a principal for the faithless actions of his agent, even when the principal has suffered no injury. *See generally Webb v. RLR Assocs.*, No. 03 Civ. 4275(HB), 2004 U.S. Dist. LEXIS 4489, 2004 WL 555699, at *2 (S.D.N.Y. Mar. 19, 2004).

The Second Circuit has clarified that misconduct by an employee that rises to the level of a breach of a duty of loyalty or good faith is sufficient to warrant forfeiture by contrast, acts of disloyalty are not substantial and therefore, do not qualify under this standard, if the disloyalty

consisted of a single act, or [if] the employer knew of and tolerated the behavior. *Phansalkar v. Andersen Weinroth & Co., L.P.,* 344 F.3d 184, 200 (2d Cir. 2003). Plaintiff cannot show that Ovodova committed *any* persistent pattern of misconduct. The e-mailing of the customers lists was done by mistake and was immediately deleted, not disseminated or shared with anyone.  Ovodova Decl. ¶¶56, 57 and 58.

Here, Plaintiff has failed to show a likelihood of success on the merits for its claims for the breach of fiduciary duty or the faithless servant doctrine.  Courts in this circuit have generally found that minor misconduct does not constitute the type of persistent pattern of disloyalty that courts have found necessary to bring conduct within the confines of the faithless servant doctrine. *Stefanovic v. Old Heidelberg Corp*., 2022 U.S. Dist. LEXIS 157711 (S.D.N.Y. 2022). Similarly, no trade secrets were divulged by Ovodova.

Plaintiff admitted does not have *any* damages. Instead, it submits that it may face damages in the future based on the alleged actions of Defendant Ovodova. Plaintiff states that "upon information and belief", Defendant Ovodova is using Plaintiff's marketing strategy and customer list to drive business to Defendant Shark. However, this speculative allegation, without more, is insufficient to establish a likelihood of success on the merits.

Accordingly, Plaintiff is unable to show a likelihood of success on the merits of its claim for breach of fiduciary duty or Faithless Servant Doctrine against Defendant Ovodova.

E.  *Plaintiff cannot establish the likelihood that it will prevail of its cause of action for unjust enrichment.*

"The elements of a cause of action to recover for unjust enrichment are '(1) the defendant was enriched, (2) at the plaintiff's expense, and (3) that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered.'" *GFRE, Inc. v U.S. Bank, N.A.*, 130 A.D.3d 569, 570 (2d Dept. 2015) (*quoting Mobarak v. Mowad*, 117 A.D.3d 998, 1001, 986

N.Y.S.2d 539 (2014)). "The essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered" *Id.* (internal citations omitted)

Again, Plaintiff again submits argument in contradiction to its Complaint by stating that Defendants have used and continue to use Plaintiff's trade secrets. Plaintiff has failed to produce any proof whatsoever that Defendant Shark or Defendant Ovodova is utilizing Plaintiff's information. Instead, Plaintiff submits conclusory statements that Defendant Shark has generated revenues through sales to Plaintiff's customers. Such a conclusory allegation, without proof of a single customer that has supposedly purchased products from Defendant Shark based on the use of any of Plaintiff's trade secret(s) warrants a finding that Plaintiff does not have a likelihood of success on the merits.

Further, Plaintiff submits conclusory statements, without proof, that Plaintiff has been harmed due to the alleged misappropriation. Plaintiff does not provide a single customer name that no longer does business with, or does substantially less business with Plaintiff, due to Defendant Shark or Defendant Ovodova's alleged actions. Thus, Plaintiff cannot show how Defendant Shark was enriched at Plaintiff's expense. As such, Plaintiff is unable to show a likelihood of success on the merits of its unjust enrichment claim.

## **CONCLUSION**

For the reasons set forth herein, Defendant Ovodova respectfully requests that this Court deny Plaintiff's request for a Preliminary Injunction and/or Temporary Restraining Order and to grant such other and further relief as this Court deems just and proper.

Dated: Hollis, New York
     April 5, 2024

                          Respectfully submitted,

**SMIKUN LAW, PLLC**

By: /s/ *Alan Smikun*
Alan Smikun, Esq.
Attorney for Defendant
*Ekaterina Ovodova*
80-15 188th Street, Suite 202
Hollis, New York 11423
(718) 928-8820 (Direct Dial)
(718) 732-2868 (Facsimile)
Smikunlaw@gmail.com