UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

BULLION EXCHANGE LLC,

                              *Plaintiff*,

                                                              **REPORT AND
                                                              RECOMMENDATION**

                                                              2:24-cv-00467 (SJB) (JMW)

                -against-

BULLION SHARK, LLC and EKATERINA
OVODOVA,
                              *Defendants*.

------------------------------------------------------------------X

**A P P E A R A N C E S:**

        Eugene Bondar, Esq.
        **Bondar Legal P.C.**
        3 E Evergreen Rd.,
        Unit 101 PMB 530
        New City, NY 10956
        *Attorneys for Plaintiff*

        Michael J. Mauro, Esq.
        Kyle F. Monaghan, Esq.
        **Milman Labuda Law Group PLLC**
        3000 Marcus Avenue, Suite 3W8
        Lake Success, NY 11042
        *Attorneys for Defendant Bullion Shark, LLC*

        Alan Smikun, Esq.
        **Smikun Law, PLLC**
        80-15 188th Street, Suite 202
        Hollis, NY 11423
        *Attorneys for Defendant Ekaterina Ovodova*

**WICKS,** Magistrate Judge:

        Plaintiff Bullion Exchange LLC, ("Plaintiff" or "Bullion Exchange") commenced this

action on January 22, 2024, against Defendants Bullion Shark, LLC ("Bullion Shark") and

1

Ekaterina Ovodova ("Ovodova" and collectively, the "Defendants") for injunctive relief and damages arising out of the alleged misappropriation of Plaintiff's confidential information and trade secrets, including customer lists, marketing strategies, and other proprietary business information. (*See* generally ECF Nos. 1, 43.) Before the Court now is Plaintiff's Motion for Leave to File its Second Amended Complaint. (ECF Nos. 58-60.) For the reasons set forth below, the undersigned respectfully recommends that Plaintiff's Motion to Amend the Complaint be **GRANTED** *in part* and **DENIED** *in part*.[1]

## BACKGROUND

### I.    *Factual and Procedural Background*

Plaintiff Bullion Exchange is a Delaware limited liability company with its principal place of business located in New York, NY, that "operates both brick and mortar and online sales portals that trade, buy, and sell rare coins, bullion, and precious metals." (ECF Nos. 1 at ¶ 14; 43 at ¶ 6.) Bullion Exchange primarily receives most of its revenue from online sales through its website, eBay, and other online marketplaces. (ECF No. 43 at ¶ 13.) Defendant Bullion Shark, a direct competitor of Plaintiff, is a New York limited liability company with its principal place of business located in Westbury, New York, 11590. (*Id.* at ¶ 7.) Similar to Plaintiff, Bullion Shark, operates online through their personal website and eBay, "where it buys, sells and trades rare

---

[1] While the Second Circuit has suggested in dicta and non-precedential opinions that a motion to amend is non-dispositive, it has yet to explicitly hold so. Thus, lower courts within this Circuit have taken two approaches when deciding motions to amend: some treat the motion as wholly non-dispositive, reviewable only for clear error, others treat the motion as dispositive if denying and non-dispositive if granting." *Covet & Mane, LLC v. Invisible Bead Extensions, LLC*, No. 21CIV7740 (JPC)(RWL), 2023 WL 6066168, at *5 (S.D.N.Y. Sept. 18, 2023) (internal citations omitted) (cleaned up). *See e.g., Pusepa v. Annucci*, No. 17-CV-7954 (RA) (OTW), 2024 WL 4579450, at *1 (S.D.N.Y. Oct. 25, 2024) ("A magistrate judge's denial of a motion to amend a complaint should be treated as dispositive, while a grant of the same motion should be treated as non-dispositive."); *Portelos v. City of New York*, No. 12 Civ. 3141 (RRM) (VMS), 2015 WL 5475494, at *1 (E.D.N.Y. Sept. 15, 2015) ("[D]istrict courts in this circuit have generally found that denial of a motion to amend is dispositive, whereas granting a motion to amend is non-dispositive."). Accordingly, because the recommendation herein is that the motion be partially denied, the undersigned proceeds by Report and Recommendation rather than Order.

coins, bullion, precious metals, notes, bills, trading cards, and other collectibles to customers throughout the United States." (*Id.* at ¶ 15.) Defendant Ovodova is a New York resident, currently employed by Bullion Shark as its Head of eCommerce. (*Id.* at ¶ 8.)  According to the Amended Complaint, Ovodova was employed by Plaintiff as the Director of Marketing from December 29, 2018, to September 15, 2023. (*Id.* at ¶ 3.)  In that role, Ovodova allegedly had access to Plaintiff's confidential information including their Customer Lists and Marketing Strategy. (*Id.*)  Plaintiff alleges that Ovodova misappropriated the confidential information and trade secrets for her personal benefit and for the benefit of Bullion Shark, her new employer. (*Id.* at ¶ 4.)

On January 22, 2024, Plaintiff commenced this action asserting claims under 18 U.S.C. § 1836 *et seq.*, and New York's common law, alleging the following: (i) misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*; (ii) misappropriation of trade secrets under New York law; (iii) unfair competition under New York Common Law, (iv) breach of fiduciary duty as to Defendant Ovodova, (v) aiding and abetting breach of fiduciary duty as to Defendant Bullion Shark; and (vi) unjust enrichment as to all Defendants. (ECF No. 1 at ¶¶ 82-153.) On January 23, 2024, Plaintiff moved for a Preliminary Injunction and Temporary Restraining Order to Show Cause (ECF No. 7), which was ultimately denied. (*See* Electronic Order dated May 8, 2024.) During that same Conference, the undersigned referred the case to Mediation and granted Plaintiff's request for extension of time file an Amended Complaint. (Electronic Orders dated May 8, 2024.)  On May 17, 2024, Plaintiff complied with this Court's deadline and filed the Amended Complaint.[2] (ECF No. 43.) As

---

[2] The First Amended Complaint ("FAC") filed on May 17, 2024 (ECF No. 43), alleges "causes of action against the Defendants for: (i) their misappropriation of trade secrets under 18 U.S.C. § 1836 et seq. (known as the Defend Trade Secrets Act ("DTSA")); (ii) New York common law causes of action for the misappropriation of trade secrets; (iii) unfair competition; (iv) breach of fiduciary duty; (v) aiding and

Mediation continued, the parties filed a Joint Motion to Stay, which was granted by the undersigned. (ECF No. 47; Electronic Order dated September 13, 2024.) On December 27, 2024, the parties filed a Joint Status Report indicating the status of the Mediation, where Defendants requested a pre-motion conference for an anticipated motion to dismiss. (ECF No. 50.) On January 2, 2025, an Electronic Order was posted indicating that the Mediation had failed. (*See* Electronic Order dated January 2, 2025.) A Status Conference was held on January 13, 2025, where the undersigned vacated the Stay of Discovery, set new discovery deadlines, and following a discussion about amendment of the complaint, the undersigned directed Counsel for Defendants to file a letter on ECF indicating whether or not they stipulate to the proposed Amended Complaint. (ECF No. 51.) Following Defendants' joint letter (ECF No. 53) indicating that they do not stipulate to the proposed Amended Complaint, a briefing schedule was set. (*See* ECF No. 54 and Electronic Order dated February 14, 2025.) This Court granted extensions of time and leave to file excess pages regarding the Motion to Amend moving papers. (*See* ECF Nos. 55-57.) On April 11, 2025, Plaintiff filed its Motion to Amend and supporting papers. (ECF Nos. 58-60.) In opposition, Defendants Bullion Shark and Ovodova filed their motion papers. (ECF Nos. 61-64.) Plaintiff then filed their reply. (ECF No. 65.) Oral Argument was held on April 25, 2025. (ECF No. 67.) Following argument, the parties filed supplemental letter briefs. (ECF Nos. 68-70.)

## II.    *The Parties' Contentions*

### A.    *Plaintiffs' Motion to Amend*

---

abetting breach of fiduciary duty; [(vi) unjust enrichment; (vii) breach of contract against Ovodova; (viii) conversion; and (ix) breach of implied duty of good faith and fair dealing against Ovodova.] (*See id.*) Bullion Exchange seeks injunctive relief, compensatory damages, consequential damages, restitution, attorneys' fees, and costs, and all other appropriate remedies available under the DTSA and New York state law." The FAC adds an additional claim of breach of contract. (*Id.* at ¶ 5.)

Plaintiff seeks leave to file their proposed Second Amended Complaint ("SAC"), which purportedly includes "additional allegations and evidence in support of Plaintiff's original claims, a new cause of action for tortious interference with business relations and removes the claim for conversion." (ECF No. 60 at 1.) Plaintiff states that the SAC is based on information uncovered through the on-going discovery, "along with other details that were inadvertently omitted from prior pleadings by preceding counsel." (*Id.*)

Plaintiff asserts that this motion was not untimely or delayed. (*Id.* at 7.) The proposed SAC is sought one year after commencing this action and within that year, the parties were in mediation for approximately six months, beginning in June of 2024 through December of 2024, and discovery was stayed from September to December of 2024. (*Id.*) In addition, Plaintiff points out that discovery responses and documents were received on or around July 8, 2024, which was during the time of mediation. (*Id.*)  At the January 13, 2025, Status Conference, the discovery stay was vacated, and Plaintiff informed the Court of its intention to amend the Complaint. (*See* ECF No. 51.) Thus, Plaintiff contends that there has been no undue delay since the parties have not answered or moved against any Complaint, discovery remains on-going, and no trial has been set. (ECF No. 60 at 8.)

Plaintiff then asserts that the amendment is not sought in bad faith. (*Id.* at 9.) As Plaintiff alleges, the scope of the "legal theories" remains the same, there have been no misrepresentations as both the Court and Defendants were informed of this proposed SAC, and this amendment was due to the "limited discovery produced by Defendants."  (*Id.* at 10.) Nor would the SAC be prejudicial to Defendants, Plaintiff states because again, no answer or other moving papers have been filed in response to the Original or First Amended Complaint. (*Id.* at 12.)   Plaintiff further states that "the only novel claim in the SAC is one for tortious interference,

5

stemming directly from the same events and transactions which predicated the previously asserted claims." (*Id.*) Thus, discovery would not be affected by the SAC. (*Id.*)  Finally, Plaintiff asserts that the SAC is not futile as each of the nine claims are successfully pled, which the undersigned examines further below. (*Id.* at 14.)

### B.     *Defendant Bullion Shark's Opposition*

Defendant Bullion Shark vehemently opposes this Motion to Amend. As an initial matter, Bullion Shark states that Plaintiff brings this proposed SAC after obtaining "extensive discovery provided during the mediation process, which Plaintiff improperly uses in violation of the mediation rules to support this motion." (ECF No. 63 at 1.) During the mediation, Plaintiff was offered an opportunity to conduct a forensic examination of Defendant Ovodova's cell phone, which would have allegedly uncovered if trade secrets and/or the customer list in question were in fact taken. (*Id.*) However, as Defendant asserts, Plaintiff declined to do so, and rather, used the information revealed in mediation to bring this motion.  (*Id.*) Thus, with this alone, Defendant states this establishes delay and bad faith on Plaintiff. (*Id.* at 2.) Moreover, Defendant asserts that even with the extensive discovery provided throughout the mediation, Plaintiff's claims remain futile and are based on mere speculation. Defendant Bullion Shark urges this court to deny the Motion to Amend. Bullion Shark (*Id.*)

### C.     *Defendant Ovodova's Opposition*

Defendant Ovodova opposes, asking the Court to deny Plaintiff's Motion to Amend for several reasons. First, the SAC is sought a year after the commencement of this action. As Ovodova states, this "is the latest attempt for Plaintiff to change its theory of liability after its prior requests have not yielded their intended results." (ECF No. 61 at 1.) Similar to Bullion Shark, Ovodova alleges that Plaintiff delayed this motion and improperly uses the discovery

provided for settlement purposes in its Motion to Amend. (*Id.*) With this, Ovodova states that this motion is delayed and filed in bad faith. (*Id.*) Finally, Ovodova asserts that the proposed amendments are futile because throughout the past year, she has maintained that she was not in possession of Plaintiff's customer lists, nor has she shared them. (*Id.*)

### D.    *Plaintiff's Reply*

Plaintiff asserts that Defendants misinterpret Rule 15's liberal standard for when leave is to be freely given. (ECF No. 65 at 1.) As for the timeliness argument, Plaintiff reiterates that there has been "diligent pursuit of claims, not dilatory tactics." (*Id.* at 2.) Again, Plaintiff points to the timeline of mediation and that the bad faith accusations are baseless since Plaintiff has legitimate claims that have been uncovered through discovery. (*Id.*) Plaintiff addressed the forensic examination by stating that declining it was for litigation strategy, which does not equate bad faith. (*Id.*) Specifically, Plaintiff states "[o]nce mediation proved ineffective and the action resumed, the examination became a tool for formal discovery, not early resolution," and "[i]nitial fact discovery, including documents and interrogatories requested, can help refine the scope and focus of a forensic examination, making it more targeted and cost-effective." (*Id.*) As to the argument of prejudice, Plaintiff asserts that generalized claims of prejudicial impact are insufficient, the case is in its early stages, and Defendants are aware of Plaintiff's "core allegations." (*Id.* at 3.) Plaintiff continues to state that the amendments are not futile, and that Defendants are arguing against this motion as if it were a summary judgment, attempting to rebut the allegations, which is not the stage the parties are in. (*Id.* at 4.) Finally, Plaintiff contends that the discovery is not improperly used. (*Id.* at 7.) Plaintiff states that discovery demands were served prior to mediation and these pre-existing demands "establishes that the information was already within the scope of permissible discovery under Rule 26(b)(1), which allows for the

discovery of any non-privileged matter relevant to a party's claim or defense." (*Id.* at 8.) Thus, Plaintiff reaffirms that the Motion to Amend should be granted.

## **THE LEGAL FRAMEWORK**

Motions to amend pleadings are governed by the Federal Rule of Civil Procedure 15(a). Pursuant to Fed. R. Civ. P. 15(a)(2), "[t]he court should freely give leave when justice so requires." Generally, "[u]nless there is a showing of bad faith, undue delay, futility or undue prejudice to the non-moving parties, the district court should grant leave to amend." *Adlife Mktg. & Commcns Co., Inc. v. Best Yet Mkt., Inc.*, No. 17-CV-02987 (ADS) (ARL), 2018 WL 4568801, at *1 (E.D.N.Y. Sept. 24, 2018) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)).

The party opposing the proposed amended pleading has the burden of establishing that amendment would be prejudicial or futile. *Jipeng Du v. Wan Sang Chow*, No. 18-CV-01692 (ADS) (AKT), 2019 WL 3767536, at *4 (E.D.N.Y. Aug. 9, 2019). However, the burden to explain the delay rests with the movant. *SATCOM Int'l Grp. PLC v. ORBCOMM Int'l Partners, L.P.,* No. 98-cv-9095 (DLC), 2000 WL 729110, at *23 (S.D.N.Y. June 6, 2000). The moving party must attach the proposed amended complaint to the motion, which has been satisfied here, specifying the new claims and/or parties intended to be added. (*See* ECF No. 59-2); *see also Nabatkhorian v. Cnty. of Nassau*, No. 12-CV-1118 (JS) (GRB), 2012 WL 13113646, at *1 (E.D.N.Y. Aug. 9, 2012).

The Second Circuit has clarified the standard to be applied by the district courts in considering motions for leave to amend dependent upon the timing of the proposed amendment:

> The ability of a plaintiff to amend the complaint is governed by Rules 15 and 16 of the Federal Rules of Civil Procedure which, when read together, set forth three standards for amending pleadings that depend on when the amendment is sought. At the outset of the litigation, a plaintiff may freely amend her pleadings pursuant to Rule 15(a)(1) as of right without court permission. After that period ends—either upon expiration of a specified period in a scheduling order or upon expiration of

the default period set forth in Rule 15(a)(1)(A)—the plaintiff must move the court for leave to amend, but the court should grant such leave "freely . . . when justice so requires" pursuant to Rule 15(a)(2). This is a "liberal" and "permissive" standard, and the only "grounds on which denial of leave to amend has long been held proper" are upon a showing of "undue delay, bad faith, dilatory motive, [or] futility." The period of "liberal" amendment ends if the district court issues a scheduling order setting a date after which no amendment will be permitted. It is still possible for the plaintiff to amend the complaint after such a deadline, but the plaintiff may do so only up [to] a showing of the "good cause" that is required to modify a scheduling order under Rule 16(b)(4).

*Sacerdote v. NYU*, 9 F.4th 95, 115 (2d Cir. 2021); *see also Johnson v. Barnett Outdoors, LLC*, No. 21-CV-6311 (MJP), 2023 U.S. Dist. LEXIS 208011, at *4 (W.D.N.Y. Nov. 20, 2023) (stating that Rule 15(a)'s standard must be balanced with Rule 16(b)'s good cause standard).

To this end, under Rule 16(b), "good cause" is required to modify a scheduling order like the Rule 26(f) Scheduling Order set by the undersigned in the instant case considering the date to amend pleadings within this Scheduling Order has long since passed. *See* Fed. R. Civ. P. 16(b)(4); *Sacerdote*, 9 F.4th at 115 ("[T]he period of 'liberal' amendment ends if the district court issues a scheduling order setting a date after which no amendment will be permitted. It is still possible for the plaintiff to amend the complaint after such a deadline, but the plaintiff may do so only up a showing of the 'good cause' that is required to modify a scheduling order under Rule 16(b)(4)"). "[A] finding of 'good cause' depends on the diligence of the moving party." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000); *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 282 F.R.D. 76, 79 (S.D.N.Y. 2012) ("The Rule 16(b)(4) 'good cause' inquiry is primarily focused upon the diligence of the movant in attempting to comply with the existing scheduling order and the reasons advanced as justifying that order's amendment. The burden of demonstrating good cause rests with the movant.").

It is within this framework that the undersigned analyzes the instant application to amend.

## DISCUSSION

Plaintiff seeks leave to amend following the deadline imposed by the undersigned, which was originally June 26, 2024, prior to Mediation.  Specifically, it seeks to add additional allegations in support of its current claims, add a new claim for tortious interference with business relations, and remove its claim for conversion. (ECF No. 60 at 1.)

Defendants challenge the viability of all of Plaintiff's claims, inclusive of the new allegations added to amplify the existing pleading.

### i.    Good Cause under Fed. R. Civ. P. 16

To show good cause under Fed. R. Civ. P. 16(b)(4), "the moving party must demonstrate that, despite having exercised diligence in its efforts to adhere to the court's scheduling order, 'the applicable deadline [to amend] could not reasonably have been met.'" *Christians of Cal., Inc. v. Clive Christian N.Y., LLP*, No. 13 Civ. 0275 (KBF) (JCF), 2014 WL 3605526, at *4 (S.D.N.Y. July 18, 2024) (citation omitted).  Courts often consider whether the moving party demonstrated diligence in complying with the scheduling order's deadlines. *See McGucken v. Content IQ LLC*, No. 20 Civ. 08114 (AKH), 2021 WL 5357473, at *1 (S.D.N.Y. Nov. 16, 2021). Good cause is demonstrated by a showing that despite its having exercised diligence, the applicable deadline could not have been reasonably met by the [moving party]." *Ideavillage Prods. Corp. v. Copper Compression Brands LLC*, No. 20-CV-4604, 2021 WL 5013799, at *2 (S.D.N.Y. Oct. 27, 2021) (quotation marks omitted) (citation omitted). Notably, however, courts may also consider whether "allowing the amendment at this stage of the litigation will prejudice" the non-movant. *Kassner*, 496 F.3d 229 at 245.

Plaintiff's Motion to Amend is made well after the deadline set in the Scheduling Order, and so Rule 16's good cause standard applies as well as Rule 15.[3] *See N.Y. SMSA Ltd. P'ship v. Town of Hempstead,* No. 10-CV-4997 (AKT), 2013 WL 1148898, at *3 (E.D.N.Y. Mar. 19, 2013). Plaintiff acknowledges this by affirming that this was the first opportunity it had to move for the SAC because it did not possess the relevant information to bring forth this motion prior to the on-going discovery. (ECF No. 60 at 9.) Plaintiff also alleges that it followed the Court's directives by engaging in the Mediation and only a month after the conclusion of that, Plaintiff moved for leave to file the instant motion. (*Id.*)

The time to amend the pleadings under the Scheduling Order was June 26, 2024. However, from May 2024 through January 2025, the parties engaged in Mediation. (Electronic Order dated 05/08/2024; ECF No. 51.) Two weeks after the Report of Mediation Unsettled was filed, Plaintiff informed the Court and the parties of its desire to amend. (ECF No. 51.) Given the fact that the parties were engaged in Mediation, Plaintiff could not have sought leave to amend at an earlier opportunity to meet the Scheduling Order deadline. Accordingly, good cause has been shown and Plaintiff has demonstrated that the applicable deadline to amend could not have been met. *See Christians of Cal., Inc.*, 2014 WL 3605526, at *4.

**ii.    Undue Delay**

"Mere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (citation omitted); *see also Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (emphasizing prejudice and bad faith over delay). Although mere delay is insufficient to deny a motion to amend, the moving party has the burden to "provide satisfactory

---

[3] At Oral Argument, Counsel for Plaintiff acknowledged that Rule 16(b)(4)'s requirement of good cause must be analyzed by the Court in this instant motion. (ECF No. 67.)

explanation for the delay." *United States v. Inc. Village of Island Park*, No. CV-90-0992, 1995 WL 669936, at *1 (E.D.N.Y. Nov. 6, 1995). Ordinarily, where the moving party's fails to provide a detailed explanation as to why the proposed amendments could not have been alleged previously, a court will assume there was undue delay. *Perez v. Escobar Construction, Inc.*, 342 F.R.D. 378, 381-82 (S.D.N.Y. Nov. 29, 2022).

A court may deny leave to amend "where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice other parties." *Grace v. Rosenstock*, 228 F.3d 40, 53-54 (2d Cir. 1999) (citing *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990)); *State Teachers Retirement Board v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) ("Mere delay, [] absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend."). Even years after the discovery deadline has passed, courts have nevertheless granted leave if the circumstances so warranted. *See, e.g., Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 235 (2d Cir. 1995) (affirming district court's decision to grant leave to amend despite four-year delay although plaintiff did not offer a reason for delay but central issue in case changed throughout the litigation); *Margel v. E.G.L. Gem Lab Ltd.*, No. 04-CV-1514 (PAC) (HBP), 2010 WL 445192, at *10 (S.D.N.Y. Feb. 8, 2010) (granting motion to amend despite delay of at least six months and noting that "courts frequently grant leave to amend after much longer periods of delay").

However, "[c]ourts will find that a party has not acted diligently where the proposed amendment is based on information the party knew, or should have known, in advance of the motion deadline" and therefore must provide an explanation for the delay. *N.Y. SMSA Ltd. P'ship v. Town of Hempstead*, No. 10-CV-4997 (AKT), 2013 U.S. Dist. LEXIS 37833, at *12 (E.D.N.Y. Mar. 19, 2013); *see also Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452

(S.D.N.Y. 2016); *Johnson v. Barnett Outdoors, LLC*, No. 21-CV-6311 (MJP), 2023 U.S. Dist. LEXIS 208011, at *5 (W.D.N.Y. Nov. 20, 2023) (noting that the burden of showing diligence rests on the party seeking to amend); *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 198 (S.D.N.Y. 2014) ("Diligence is the primary consideration in the good cause analysis. Plaintiffs demonstrate diligence [where] despite their best efforts, the deadline could not have been reasonably met.").

Here, the undersigned finds that Plaintiff's motion to amend is not unduly delayed. Plaintiff did not possess the relevant information to file this motion prior to discovery. (ECF No. 60 at 9.) Plaintiff followed the Court's directives by engaging in the Mediation and only a month after the conclusion of that, Plaintiff moved for leave to file the instant motion. (*Id.*) Plaintiff stresses that this was the earliest time to propose the SAC. (*Id.*)  The parties also candidly admitted that that no depositions have been taken and only paper discovery has occurred. (ECF No. 67.) Therefore, this factor weighs in favor of allowing the amendment.

### iii.  **Bad Faith**

"While not much case law exists in this Circuit about what constitutes bad faith for the purposes of denying a motion for leave to amend a pleading, a finding that a party is seeking leave to amend solely to gain a tactical advantage supports a finding that such an amendment is made in bad faith." *Feuer v. Cornerstone Hotels Corp.*, No. 14-CV-5388 (JFB) (SIL), 2017 WL 3841841, at *5 (E.D.N.Y. Aug. 4, 2017), *report and recommendation adopted*, 2017 WL 3842350 (E.D.N.Y. Aug. 31, 2017) (internal quotation marks omitted) (citation omitted). The burden is on the party opposing the amendment to establish bad faith. *Contrera v. Langer*, 314 F. Supp. 3d 562, 567 (S.D.N.Y. 2018) ("While the party seeking to amend its pleading must explain

any delay, the party opposing the amendment 'bears the burden of showing prejudice, bad faith, and futility of the amendment.'") (citations omitted).

Here, Defendant Bullion Shark argues bad faith because Plaintiff improperly used the discovery obtained during the mediation process to bring this proposed SAC and declined to conduct the forensic exam, which would uncover whether the trade secrets were in fact taken. (ECF No. 63 at 1.) Defendant Ovodova emphasizes that the discovery provided during the mediation was solely for settlement purposes. (ECF No. 61 at 1.) Plaintiff rebuts these assertions by citing to Rule 26 and pointing to the fact that discovery demands were served prior to mediation. (ECF No. 65 at 8.)

The discovery that was introduced throughout the mediation, would have been discoverable and disclosed under the parties' discovery obligations pursuant to Fed. R. Civ. P. 26. As Rule 26 dictates, all documents that are relevant to a party's claims or defenses, are to be disclosed unless subject to privilege grounds or nonproportional. *See* Fed. R. Civ. P. 26(b). With this, there is nothing in the record to support a finding of bad faith, namely, seeking leave to amend solely to gain a tactical advantage, this factor weighs in favor of allowing the amendment.

## iv.    **Prejudice**

Prejudice to the nonmoving party is perhaps the most important factor when determining whether to grant a claimant's leave to amend and is often the "most frequent reason for denying leave to amend." *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008). When considering whether the opposing party may be prejudiced, courts consider whether the new claim would: (1) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay the resolution of the dispute; (3) prevent the plaintiff from bringing a timely action in another jurisdiction. *Block*, 988 F.2d at 350; *see Alekperova v.*

14

*Interfaith Med. Ctr.*, No. 04-CV-202, 2006 WL 8439666, at *4 (E.D.N.Y. Aug. 8, 2006) ("[P]rejudice must take the form of increasing the non-movant's costs, surprising the non-movant with new allegations or claims, or delaying or prolonging the trial."). "[T]he proper standard is one that balances the length of the delay against the resulting prejudice.... [T]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983) (citation omitted). "The degree of potential prejudice a motion to amend may cause is evaluated against the overall progress of the litigation: the closer to the end of discovery or the closer to trial a motion to amend is filed, the more likely that it will cause prejudice and delay to the nonmoving party." *Mohegan Lake Motors, Inc. v. Maoli*, No. 16-CV-6717 (NSR)(LMS), 2018 WL 4278352, at *5 (S.D.N.Y. June 8, 2018).

Here, Defendant Bullion Shark does not address the issue of prejudice. Defendant Ovodova concludes generally that the proposed amendment would further prejudice the Defendants. (ECF No. 61 at 6.) According to Defendant Ovodova, the mere fact that Plaintiff did not continue with the forensic examination shows Plaintiff's tactics to delay this litigation. (*Id.*) As the undersigned noted earlier, this case although a year old, is still in its early stages. This is not a case where an amendment would require a fair amount of additional discovery and fact discovery has not yet ended. *Cf. Coggins v. Cnty. of Nassau*, 254 F. Supp. 3d 500, 508–09 (E.D.N.Y. May 26, 2017) (collecting cases where prejudice stemmed from the proposed amendment considering it would require reopening discovery, thereby resulting in further delay in resolving the matter). Upon review, there is no indication of potential prejudice to Defendants if the amendments were permitted.

15

The undersigned now analyzes whether the proposed amendments are futile which, alone, could warrant denial of Plaintiff's motion. *See Reynolds v. Rockaway HD LLC*, No. 21-CV-05408 (NRM) (TAM), 2023 WL 11872630, at * (E.D.N.Y. Mar. 23, 2023) (denying a motion to amend, stating "[w]hatever the potential prejudice to Plaintiff, the Court finds that Defendant's proposed amendment is futile.").

     **v.**     **Futility**

An amendment is futile if the proposed claim could not withstand a motion to dismiss under Fed. R. Civ. P. § 12(b)(6). *IBEW Local Union No. 58 Pension Trust Fund and Annuity Fund v. Royal Bank of Scotland PLC*, 783 F.3d 383, 389 (2d Cir. 2015). "One appropriate basis for denying leave to amend is that the proposed amendment is futile." *Lucente v. IBM,* 310 F.3d 243, 258 (2d Cir. 2002); *see also In re Curaleaf Holdings, Inc. Sec. Litig.,* 519 F. Supp. 3d 99, 111 (E.D.N.Y. Feb. 15, 2021) ("[A] court need not grant leave to amend if amendment would be futile."). The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss.

District courts are to first "identify [] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

16

possibility that a [d]efendant has acted unlawfully." *Id*. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)). The Court looks to the claims below with this framework in mind.

The futility branch is ofttimes the fatal blow to success on motions to amend. *See e.g.*, *Schwasnick v. Fields*, No. 08-CV-4759 (JS) (ARL), 2010 WL 2679935, at *11 (E.D.N.Y. June 30, 2010) ("In this case, there is no evidence of undue delay, bad faith, dilatory motive, or prejudice to Defendant. However, granting leave to amend would be futile because the [pleading], even with further amendments could not survive a 12(b)(6) motion"); *McGrath v. Indus. Waste Techs.*, No. 20 Civ. 2858 (KPF), 2021 WL 791537, at *8 (S.D.N.Y. Feb. 26, 2021) ("[L]eave to amend may independently be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim . . . ."); *see also Gurvey v. Cowan, Liebowitz & Latman, P.C.*, No. 06 Civ. 1202 (LGS) (HBP), 2013 WL 3718071, at *9 (S.D.N.Y. July 15, 2013) (noting the motion to amend could have been denied based on futility alone because the potential claims lacked specificity and authority, and were otherwise meritless).

The party opposing the amendment bears the burden of proving futility. *FC Online Marketing, Inc. v. Burke's Martial Arts, LLC*, No. 14-CV-03685 (SJF) (SIL), 2016 WL 11481193, at *7 (E.D.N.Y. Sept. 30, 2016). As such, when a party objects to a motion to amend on futility grounds, "the moving party must merely show that it has at least colorable grounds for relief." *Copantitla v. Fiskardo Estiatorio, Inc.*, No. 09 Civ. 1608, 2010 WL 1327921, at *3 (S.D.N.Y. Apr. 5, 2010) (internal quotation marks omitted).

Here, Defendants argue that each of Plaintiff's claims are futile. As such, the undersigned analyzes each claim.

       i.     **Counts I and II:** *Violation of the DTSA and*
                 *Misappropriation of Trade Secrets Under New York Common Law*

The SAC includes claims under the DTSA and misappropriation of trade secrets under New York common law, for Defendants actions of improperly acquiring Plaintiffs' trade secrets, namely its customer lists and marketing strategy. *See* generally ECF No. 59-2.

Given the elements for a misappropriation claim under New York law are fundamentally the same as elements required to sufficiently state a DTSA claim, courts have found that if a plaintiff's complaint sufficiently pleads a DTSA claim, then it "also states a claim for misappropriation of trade secrets under New York law." *Superb Motors Inc. v. Deo*, No. 23-CV-6188 (JMW), 2025 WL 888464, at *25 (E.D.N.Y. Mar. 21, 2025) (citing *Catalyst Advisors, L.P. v. Catalyst Advisors Invs. Glob. Inc.*, 602 F. Supp. 3d 663, 671 (S.D.N.Y. 2022) (quoting *Iacovacci v. Brevet Holdings, LLC.,* 437 F.Supp.3d 367, 380 (S.D.N.Y. 2020)). Therefore, the undersigned analyzes these claims together.

Under the DTSA, "a plaintiff must allege that it possessed a trade secret that the defendant misappropriated." *Iacovacci*, 437 F. Supp. 3d at 380 (citing 18 U.S.C. § 1836(b)(1)). The Act "contemplates three theories of liability: (1) acquisition, (2) disclosure, or (3) use." *JAPNA, Inc. v. SELFX Innovations Inc.*, No. 22-CV-10753 (ALC) (RWL), 2024 WL 1250269, at *7 (S.D.N.Y. Mar. 22, 2024) (quoting *AUA Priv. Equity Partners*, LLC v. Soto, No. 17-cv-8035, 2018 WL 1684339, at *4 (S.D.N.Y. Apr. 5, 2018)). Similarly, under the New York law, when a plaintiff claims "misappropriation of a trade secret [they] must prove: (1) it possessed a trade secret, and (2) defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means." *Scienton Techs., Inc. v. Computer Assocs. Int'l Inc.*, No. 04-CV-2652(JS) (ETB), 2012 WL 13105453, at *10 (E.D.N.Y. Sept. 25, 2012) (quoting *Integrated Cash Mgmt. Servs. Inc. v. Digital Transactions, Inc.*, 920 F.2d 171, 173 (2d

Cir. 1990)). To that end, trade secrets under New York law is defines as "'any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.'" *Id.* (quoting *Ashland Mgmt. Inc. v. Janien*, 82 N.Y.2d 395, 407, 624 N.E.2d 1007, 1012, 604 N.Y.S.2d 912, 917 (1993)).

> The DTSA defines trade secret to include "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, so long as: (1) the owner thereof has taken reasonable measures to keep such information secret and (2) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

*Better Holdco, Inc. v. Beeline Loans, Inc.*, 666 F. Supp. 3d 328, 384 (S.D.N.Y. 2023) (citing 18 U.S.C. § 1839(3) (quotations omitted)). The SAC states that access to the lists is restricted, protected by passwords and limited to their owners and a few employees. (ECF No. 59-2 at ¶ 25.) In addition, the lists among other things, derive independent economic value by attracting new clients, retaining their current clients and generates new sales. (*Id.* at ¶¶ 18, 21.) Finally, the lists are not publicly available or accessible. (*Id.* at ¶ 23.) The proposed amendment articulates that Defendant Ovodova took steps to acquire the customer lists by emailing herself the lists, which was discovered upon review of security footage. (ECF No. 59-2 at ¶¶ 81, 84-89.) Also, Defendant Bullion Shark knew or had reason to know that by Defendant Ovodova promising to increase their sales within the first year through marketing, "the only feasible method … was by acquiring a substantial number of new potential customers' information." (*Id.* at ¶ 90.) Therefore, Plaintiff has pled enough to sustain counts one and two with regard to its customer lists.[4]

---

[4] The Defendants' supplemental letters focus on the absence of a "concrete link" to show that either defendant misappropriated the alleged trade secret and that pleading circumstantial evidence is not

However, Plaintiff has not adequately pled that its marketing strategy is a trade secret. The SAC alleges that there have been significant investments for this marketing strategy over the years and is "highly guarded." (ECF No. 59-2 at ¶¶ 28-30, 163.)  Yet, it appears to include general information that is publicly available[5] to duplicate. *See GMH Cap. Partners v. Fitts*, No. 24-CV-00290 (ER), 2025 WL 950674, at *8 (S.D.N.Y. Mar. 28, 2025) (quoting *Garvey v. Face of Beauty LLC*, 634 F. Supp. 3d 84, 97 (S.D.N.Y. 2022) ("[E]xcept where the alleged trade secret conveys a competitive advantage and cannot be readily duplicated from generally available information, marketing strategies, or mere knowledge of the intricacies of a business do not rise to the level of a trade secret.")). Therefore, the marketing strategy is not a trade secret.

### **Count III:** *Unfair Competition under New York Common Law*

Next, Plaintiff asserts a cause of action under New York common law for unfair competition because Defendants "improperly acquired, used, and continue to use [Plaintiff's] Trade Secrets to gain an unfair competitive advantage over [Plaintiff]."  (ECF No. 59-2 at ¶ 155.) Specific to Defendant Ovodova, it is alleged that she used her upper management position to make unauthorized copies of the trade secrets and emailed it to herself. (*Id.* at ¶ 156.) As a result, Defendant Bullion Shark's improper use of the trade secrets coupled with the similarities in name to Plaintiff has caused customer confusion and unfair competition. (*Id.* at ¶¶ 160-61.)

---

enough. (ECF Nos. 68 at 2, 69 at 3.) However, "courts have observed that misappropriation is regularly proved by circumstantial evidence, and that such evidence does not fail to state a DTSA claim as a matter of law." *Onyx Renewable Partners L.P. v. Kao*, No. 22-CV-3720 (RA), 2023 WL 405019, at *5 (S.D.N.Y. Jan. 25, 2023).

[5] The SAC states "Bullion Exchange meticulously crafted its marketing strategy from a sophisticated blend of various data sources, including internal proprietary data from analytics. This comprehensive dataset *encompasses both publicly available and proprietary customer information*, as well as competitive analysis, market research, historical industry and direct sales data, listing strategies, programs, customer relationship management databases, product trends, and advanced data analytics and predictive modeling techniques ("Marketing Strategy"). (ECF No. 59-2 at ¶ 26.) (emphasis added).

Under New York law, a plaintiff must show (i) a likelihood of confusion and (ii) bad faith. *Miss Universe, L.P., LLLP v. Villegas*, 672 F. Supp. 2d 575, 596 (S.D.N.Y. 2009) (citing *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 35 (2d Cir.1995)). "The essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another with some element of bad faith." *Superb Motors Inc. v. Deo*, No. 23-CV-6188 (JMW), 2025 WL 888464, at *26 (E.D.N.Y. Mar. 21, 2025) (quoting *ML Genius Holdings LLC v. Google LLC*, No. 20-3113, 2022 WL 710744 at *4 (2d. Cir. Mar. 10, 2022) (quoting *Universal Instruments*, 924 F.3d 32, 50-51 (2d Cir. 2001)). Specifically, here Plaintiff claims unfair competition through Defendants' alleged misappropriation. (ECF No. 60 at 23.) Such claims "will fail where a plaintiff cannot demonstrate the bad faith misappropriation of a commercial advantage which belonged exclusively to him." *Big Vision Private Ltd. V. E.I. du Pont de Nemours and Co.*, 610 F. App'x 69, 70 (2d Cir. 2015) (quoting *LoPresti v. Mass. Mut. Life Ins. Co.*,920 N.Y.S.2d 275, 277 (N.Y. App. Div. 2d Dep't 2006)).

As discussed earlier, Plaintiff cannot allege that its marketing strategies are exclusive and do not include information of public knowledge. However, the undersigned agrees with Plaintiff that enough is pled for unfair competition of its trade secrets in connection with its customer lists. The amendment shows that Defendant Ovodova emailed copies of the trade secrets and attempted to conceal this conduct by deleting the computer records and files, which Bullion Shark now uses, establishes bad faith. (ECF No. 59-2 at ¶¶ 156-57, 160.) Moreover, the SAC alleges that the likelihood of confusion between Bullion Exchange and Bullion Shark, due to the similar names and locations of the two. (*Id.* at ¶ 161.) Indeed, Plaintiff also attaches communications with a customer illustrating the confusion. (*Id.* at Exhibit 16.) The elements as alleged set forth a claim for unfair competition.

ii.     **_Count IV:_** _Breach of Fiduciary Duty against Defendant Ovodova_

Plaintiff asserts a claim of breach of fiduciary duty pursuant to the faithless servant

doctrine for Defendant Ovodova. (ECF No. 60 at 23; 59-2 at 34.) Specifically, Plaintiff contends

that as an employee, Defendant Ovodova signed the employee handbook, which included her

duty to have Plaintiff's best interest in mind. (ECF No. 59-2 at ¶ 168.) Throughout the

employment, Plaintiff placed trust in her by promoting Defendant Ovodova to an upper

management position of Director of Marketing, which gave her access to the trade secrets at

issue. (*Id.* at ¶¶ 166-68.) As alleged, Defendant Ovodova breached her duty of loyalty by making

copies of the trade secrets and later, providing the secrets to Defendant Bullion Shark. (*Id.* at ¶¶

170-71.)

Under New York law, the faithless servant doctrine is viewed under the laws of agency.

*See Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003). For that

reason, agents are "to be loyal to his employer and is 'prohibited from acting in any manner

inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith

and loyalty in the performance of his duties.'" *Id.* (quoting *Western Elec. Co. v. Brenner,* 41

N.Y.2d 291, 295, 392 N.Y.S.2d 409, 360 N.E.2d 1091 (1977) (quoting *Lamdin v. Broadway

Surface Adver. Corp.,* 272 N.Y. 133, 138, 5 N.E.2d 66 (1936)).  Here, Plaintiff does not assert

conclusory statements. Rather, Plaintiff adequately states a cause of action for breach of

Defendant Ovodova's duty of loyalty by emailing the customer lists to herself. In the SAC,

Plaintiff outlines that by making unauthorized copies of the trade secrets and giving copies of

that to Defendant Bullion Shark, Ovodova breached her fiduciary duty owed to her employer,

Plaintiff. (ECF No. 59-2 at ¶¶ 168-172.) Defendant Ovodova's defense that this was a mistake

and immediately deleted, does not negate that Plaintiff has satisfied the elements of the faithless servant doctrine. Therefore, Plaintiff has sufficiently pleaded a claim breach of fiduciary duty.

### iii.    *Count V: Aiding and Abetting Breach of Fiduciary Duty against Bullion Shark*

Plaintiff's SAC also includes a claim of aiding and abetting breach of fiduciary duty against Bullion Shark for its knowing participation, assistance and concealment of Defendant Ovodova's actions. (*Id.* at ¶¶ 174-181.)

> Under New York law, a claim for aiding and abetting a breach of fiduciary duty requires the following elements: (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach.

*TileBar v. Glazzio Tiles*, 723 F. Supp. 3d 164, 205 (E.D.N.Y. 2024) (citing *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011) (quotation marks omitted)). Plaintiff has adequately pled element one in its claim against Defendant Ovodova for breach. (ECF No. 59-2 at ¶¶ 168-72.) Second, Defendant Bullion Shark induced or enabled the breach through the hiring process by asking Defendant Ovodova to present an action plan of how she could improve their marketing strategy, which in turn means Defendant Bullion Shark knew the amount of detail and work that goes into these strategies, and thus also knew this was obtained through improper means. (*Id.* at ¶ 176.) In addition, Defendant Bullion Shark refrained from making the employment public, which further plays into the concealment of the breach. (*Id.* at ¶ 179.) And third, Plaintiff sufficiently alleges damages due to the decline in revenue following Defendant Ovodova's resignation, which derives from the misappropriation, and the aiding and abetting of the breach. (*Id.* at ¶ 181.) Accordingly, the undersigned finds that the claim for aiding and abetting the breach of fiduciary duty is not futile.

iv.    **_Count VI:_** _Unjust Enrichment_

Plaintiff asserts an unjust enrichment claim against Defendants, claiming they have been unjustly enriched at Plaintiff's expense due to the misuse of Plaintiff's trade secrets and other confidential information by receiving the benefits and not compensating Plaintiff. (*Id.* at ¶¶ 183-86.) Duplicative claims of unjust enrichment, where the same factual allegations are pled for other contract and tort claims, should be dismissed. *See e.g.*, *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 512–13 (S.D.N.Y. 2018) (dismissing the unjust enrichment claim due to Plaintiff's failure to explain how it differed from the other contract and tort claims); *iSentium, LLC v. Bloomberg Fin. L.P.*, No. 17-CV-7601 (PKC), 2018 WL 6025864, at *4 (S.D.N.Y. Nov. 16, 2018) ("Because the conduct alleged in support of the unjust enrichment claim falls within the breach of contract claim, the unjust enrichment claim is dismissed as redundant."). The allegations here include the same conduct for misappropriation and unfair competition, namely the use of Plaintiff's trade secrets to gain a financial advantage.  (*Id.* at ¶¶ 183-84.) Thus, this claim is duplicative and futile.

v.    **Count VII and VIII:**  *Breach of Contract and*
     *Implied Duty of Good Faith and Fair Dealing against Defendant Ovodova*

Plaintiff asserts two additional claims against Defendant Ovodova for breach of her employment contract and for breach of the implied duty of good faith and fair dealing. (ECF No. 59-2 at ¶¶ 188-204.)  As alleged, there was an existing contract through employment and the signing of the employee handbook and theft policy, which was breached through Ovodova's conduct of emailing herself the trade secrets. (*Id.* at ¶¶ 188-93.)

To state a claim for breach of contract under New York law, "the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*,

875 F.3d 107, 114 (2d Cir. 2017) (quoting *Johnson*, 660 F.3d at 142 (2d Cir. 2011)). Here, it is established that: (i) an employment contract was formed, (ii) Plaintiff performed through providing employment, training and more, (iii) Defendant Ovodova failed to perform when she misappropriated Plaintiff's trade secrets, and (iv) Plaintiffs has alleged damages through the loss of business and revenue. (ECF No. 59-2 at ¶¶ 39-42, 194-95.) Notably, Plaintiff has alleged the requisite information for a breach of contract claim and as there is no disagreement here, the undersigned finds that this claim is not futile.

Moreover in New York, the implied covenant of good faith is embedded within every contract, and therefore, a "breach of the implied duty of good faith is considered a breach of the underlying contract." *Boart Longyear Ltd. v. All. Indus., Inc.*, 869 F. Supp. 2d 407, 413 (S.D.N.Y. 2012) (citations omitted); *see also Dalton v. Educ. Testing Serv.*, 663 N.E.2d 289, 291 (N.Y. 1995) ("Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance.") With that, "a claim for breach of the implied covenant [of good faith and fair dealing] will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract." *Id.* (citing *ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234, 243–44 (S.D.N.Y.1997)).

In short, the good faith and fair dealing claim is duplicative of the contract claim. The crux behind both claims is the misappropriation of trade secrets. Plaintiff again alleges that Defendant Ovodova breached this while employed by Plaintiff when she obtained and used Plaintiff's trade secrets for her personal gain and to benefit Bullion Shark. (*Id.* at ¶ 201.) The proposed amendment lacks any independent conduct that would form the basis for this additional

claim of breach of the covenant of good faith.[6]  In the SAC, Plaintiff cites to the employee

handbook, which Defendant Ovodova signed, where it states "[n]o previous or current employee

may disclose or give access to confidential Company information, in any way or at any time,

unless otherwise authorized by Management."  *See* ECF No. 59-2 at ¶ 199. This stems from the

same allegations as the breach of contract claim. Plaintiff, in its supplemental letter contends

that,

> [w]hile overlapping conduct is possible, the implied covenant claim here is based
> on specific alleged bad faith actions by Defendants that were intended to frustrate
> Plaintiff's rights under the Employee Handbook and deprive Plaintiff of the benefits
> it reasonably expected from that agreement, going beyond a mere failure to perform
> an express contractual duty.

(ECF No. 70 at 7.) However, upon review of the SAC, both claims are predicated on the same

conduct—Defendant Ovodova's unauthorized obtaining and use of Plaintiff's trade secrets.

Thus, this claim for the breach of the implied duty good faith and fair dealing is duplicative.

  vi.   **_Count IX:_** _Tortious Interference with Business Relations_

   Plaintiff's newest and final claim alleges Defendants' intentional interference with

Plaintiff's business relationships by improperly acquiring and using its trade secrets. (ECF No.

59-2 at ¶¶ 206-12.)

> To successfully plead a claim for tortious interference with [business relations or]
> economic advantage, a plaintiff must allege: (1) it had a business relationship with
> a third party; (2) the defendant knew of that relationship and intentionally interfered
> with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or
> improper means; and (4) the defendant's interference caused injury to the
> relationship. The plaintiff must also allege that it would have entered into an
> economic relationship but for the defendant's wrongful conduct. [A]s a general rule,
> a defendant's conduct must amount to a crime or an independent tort' in order to
> amount to tortious interference with a prospective economic advantage.

---

[6] Additionally, at Oral Argument, Plaintiff stated they are pleading this in the alternative. (ECF No. 67.)
As stated on the record and now, there must be different conduct alleged to sustain both claims, which
Plaintiff has failed to prove in its additional opportunity to do so.

*City Calibration Centers Inc. v. Heath Consultants Inc.*, 727 F. Supp. 3d 332, 366–67 (E.D.N.Y. 2024) (internal citations and quotations omitted). *See also id.* (citing *Lesesne v. Brimecome*, 918 F. Supp. 2d 221, 227 (S.D.N.Y. 2013)) ("finding the weight of authority 'requires a plaintiff to identify the potential customers at issue when asserting a cause of action for interference with prospective economic advantage'").

Here, Plaintiff merely recites the same allegation that Defendants misappropriated the trade secrets for their own economic gain and due to that, Plaintiff has incurred losses. (ECF No. 59-2 at ¶¶ 207-11.) During Oral Argument the elements were discussed, and the last element of injury was particularly in dispute.[7] (ECF No. 67 at 43.)  Plaintiff properly pleads the first three elements: (i) the 384,000 customers identified in the customer lists are the third parties, (ii) Defendant Ovodova knew of this relationship as an employee and interfered by providing it to Defendant Bullion Shark for their benefit; Defendant Bullion Shark acquired the list from Ovodova and began interfering by utilizing Plaintiff's customer lists, and (iii) both Defendants used improper means to gather this information. (ECF No. 70 at 5; 59-2 at ¶¶ 206-10.) However, Plaintiff has not alleged the potential customers or contracts that fell apart as a direct result of Defendants' alleged misconduct. Rather, Plaintiff blanketly states "Bullion Exchange incurred business losses, including the loss of customers, revenue, and market share." (ECF No 59-2 at ¶ 211.) Accordingly, the undersigned finds the tortious interference claim as pleaded is futile.

### vii.    *Plaintiff's Request for Leave to Replead*

In Plaintiff's supplemental letter, Plaintiff asks to replead an apparent inconsistency. (ECF No. 70 at 8.) During Oral Argument, Defendants pointed out that the SAC states that the

---

[7] Although the undersigned provided all the parties an opportunity to discuss this in their supplemental briefs, only Plaintiff took the opportunity. Plaintiff in its supplemental brief reasserts that the elements are all met. However, the undersigned still finds that the last element of injury is lacking.

customer list data was "uploaded" rather than "exported." (ECF No. 67.) Plaintiff requests to change the paragraphs 108 and 109. (ECF No. 70 at 8.) Finally, Plaintiff states "good cause exists to allow this correction, as it arises from discovery documents that were heavily redacted and provided without a privilege log, limiting Plaintiff's ability to plead with greater specificity." (*Id.*) The current paragraphs state:

> 108. On October 23, 2023, Ovodova again misappropriated the Customer Lists. On that day, she imported two lists from the Customer Lists, which contained a total of Two Hundred Twenty-Three Thousand Five Hundred Forty-Seven (243,547) customers, into the software application, Sendlane. Attached hereto as Exhibit 12 is a copy of the screenshots showing the uploads to Sendlane.
> 109. This upload is significantly larger than the previous uploads to the system, which did not exceed Thirteen Thousand Six Hundred (13,600), as email marketing did not constitute a substantial portion of Bullion Shark's business model prior to Ovodova's misappropriation of the Trade Secrets. *See* Exhibit 12.

The proposed revisions are:

> 108. Upon information and belief, Ovodova again misappropriated the Customer Lists, or a portion thereof, after she started employment at Bullion Shark by uploading them into Bullion Shark's software, Sendlane. Thereafter, on October 23, 2023, she exported two lists from the Customer Lists, which contained a total of Two Hundred Twenty-Three Thousand Five Hundred Forty-Seven (243,547) customers, from Sendlane. Attached hereto as Exhibit 12 is a copy of the screenshots illustrating the movement of customer lists to and from Sendlane.
> 109. Upon information and belief, this export included a significant portion of the Customer Lists, given that email marketing did not constitute a substantial portion of Bullion Shark's business model before Ovodova misappropriated the Trade Secrets.

Given that the proposed revisions are not substantially different to include new facts but rather to clarify the previous allegations, Plaintiff should be permitted to replead these two paragraphs. *Contra Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (finding that plaintiff's proposed amendment was substantively problematic and that her claim is not "inadequately or inartfully" plead, leading to denying leave to replead.)

## CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Plaintiff's

Motion to Amend (ECF No. 58) be **GRANTED** *in part* and **DENIED** *in part*, as follows:

(i)     Leave to Amend counts I and II should be granted and *limited* to Plaintiff's customer lists trade secret only;

(ii)    Leave to Amend counts III, IV, V, and VII should be granted in its entirety;

(iii)   Leave to Amend counts VI, VIII, and IX should be denied; and

(iv)    Plaintiff's request to replead paragraphs 108 and 109 should be granted.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel.

Any written objections to this Report and Recommendation must be filed with the Clerk of the

Court within fourteen (14) days of service of this Report.  28 U.S.C. § 636(b)(1) (2006 & Supp.

2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections

must be directed to the district judge assigned to this action prior to the expiration of the fourteen

(14) day period for filing objections. Failure to file objections within fourteen (14) days will

preclude further review of this Report and Recommendation either by the District Court or the

Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with

the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604

(2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any

further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan &*

*Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (summary order) (same).

Dated:  Central Islip, New York.
      May 15, 2025


**RESPECTFULLY RECOMMENDED**,


/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge